**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

JERRY GORALSKI LAMB,

*Plaintiff*,

v.

MILLENNIUM CHALLENGE
CORPORATION, *et al.*,

*Defendants.*

Civil Action No. 16-765 (RDM)

---

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on plaintiff Jerry Lamb's third motion for leave to amend

his complaint, Dkt. 41; his motions for summary judgment on all three counts of his amended

complaint, Dkts. 21, 22; his motion seeking court-appointed counsel, Dkt. 27; and his motion for

entry of a default judgment against defendant the Millennium Challenge Corporation ("MCC")

and to strike a declaration supporting the MCC's motion for summary judgment, Dkt. 43.  MCC,

in turn, moves for summary judgment on all three counts of Lamb's amended complaint, Dkt.

17, and defendant George Chiamulera moves to dismiss the claims brought against him, Dkt. 11.

For the reasons explained below, Lamb's motion for leave to amend is granted in part and denied

in part; his remaining motions are denied; Chiamulera's motion to dismiss is granted; and the

MCC's motion for summary judgment is granted in part and denied in part.

**I.  BACKGROUND**

The following facts are either alleged in the amended complaint, which is the currently

operative pleading, or are subject to judicial notice.  In November 2015, Lamb applied for a job

as an "Acquisition Business Analyst" with Sawdey Solutions Services, Inc. ("Sawdey").  Dkt. 9

at 2, ¶ 6.  Sawdey, in turn, served as a contractor for the MCC, *id.*, a corporation established in

the executive branch of the federal government, *see* 22 U.S.C. § 7703(a).  The Secretary of State

serves as chairperson of the Board of Directors of the MCC.  *Id.* at § 7703(c)(5).  Other members

of the Board include the Secretary of the Treasury, the Administrator of the Agency for

International Development, the MCC's Chief Executive Officer, the United States Trade

Representative, and four other individuals appointed by the President with the advice and

consent of the Senate.  *Id.* § 7703(c)(3).  The MCC is authorized to provide foreign assistance to

countries that enter into a compact with the United States setting forth a plan for "achieving

shared development objectives."  *Id.* § 7708(a).  The MCC "may contract with individuals for

personal services, who shall not be considered [f]ederal employees for any provision of law

administered by the Office of Personnel Management."  *Id.* § 7713(a)(8).

Lamb was offered a position with Sawdey to "augment[]" MCC employees as a

"[p]ersonal [s]ervices [c]ontractor."  Dkt. 9 at 2, ¶ 6.  That position, however, required "a

favorable background check investigation."  *Id.*  The MCC ordinarily conducts its own

background investigations for applicants "for the office in question," but "in some instances [it]

may request that the United States Department of State assist in the background investigations."

*Id.*

Lamb successfully completed the required questionnaires and was cleared to begin work

as an MCC personal services contractor on February 22, 2016.  *Id.* at 2–3, ¶ 7.  On or about

March 8, 2016, however, an official at "MCC security" contacted Lamb and told him that

George Chiamulera, an "independent contractor to the Office of Personnel Security & Suitability

[in the] Bureau of Diplomatic Security [at the] U.S. Department of State," would interview him

as part of his background investigation.  *Id.* at 3, ¶ 8.  The "background investigation" was

2

"conducted in part by [the] MCC and in part by . . . George Chiamulera" and took place on

March 11 and 13, 2016.  *Id.*  Upon completion of the investigation, Chiamulera forwarded the

information he had gathered to the State Department's Office of Personnel Security &

Suitability, which subsequently forwarded that information to the MCC on March 28, 2016.  *Id.*

at 3, ¶ 9

When Lamb arrived to work on the morning of April 18, 2016, MCC officials confiscated

his government identification, removed him from the premises, and terminated his employment.

*Id.* at 3, ¶ 10.  At that time, no one offered Lamb any explanation for these events.  *Id.*  Lamb

later asked a contact at Sawdey why he had been dismissed and was told that Sawdey had been

"informed by someone at MCC that Mr. Lamb's security check came back unfavorable."  *Id.*

Lamb, then, sent an email to the MCC on April 21, 2016, requesting "copies of all information

maintained about himself" under both the Privacy Act, 5 U.S.C. § 552a, and the Freedom of

Information Act, 5 U.S.C. § 552.  *Id.* at 4, ¶ 14.  The MCC responded by email that same day,

assigning a request number to Lamb's FOIA request, but it did not separately acknowledge or

address his request under the Privacy Act.  *Id.* at 4, ¶ 15; *see also* Dkt. 1 at 12–13.

Lamb filed suit on April 26, 2016, initially alleging that the MCC had violated his rights

under the Privacy Act and FOIA by failing to provide the records he requested.  *See* Dkt. 1.  He

amended his complaint as of right on May 26, 2016, adding George Chiamulera as a defendant

and asserting three counts:  In Count 1, Lamb alleges that the MCC violated the Privacy Act and

FOIA by denying him access to records, Dkt. 9 at 4–5, ¶¶ 13–18; in Count 2, he alleges that

Chiamulera violated the Privacy Act by disseminating "protected health information [and]

inaccurate and defamatory information regarding" Lamb, without first securing his written

authorization, *id.* at 5, ¶¶ 19–22; and, in Count 3, he alleges that Chiamulera violated the Privacy

Act by "fail[ing] to make reasonable efforts to ensure that the information and records were accurate, complete, timely and relevant for agency purposes," *id.* at 5–6, ¶¶ 23–27.

Since filing the amended complaint, Lamb has filed three motions seeking leave to file a second, third and fourth amended complaint. *See* Dkts. 26, 32, 41.  The Court denied the first two of those motions as moot by minute order dated December 7, 2016.  The Court now addresses Lamb's most recent motion for leave to amend, Dkt. 41; Chiamulera's motion to dismiss; Dkt. 11; Lamb's motions for summary judgment; Dkts. 21, 22; the MCC's motion for summary judgment; Dkt. 17; and Lamb's remaining motions; Dkts. 27, 43.

## II.  ANALYSIS

### A.    Pending Dispositive Motions

Before turning to the adequacy of the claims that Lamb seeks to add, the Court starts with the pending dispositive motions:  Chiamulera's motion to dismiss, the MCC's motion for summary judgment, and Lamb's cross-motions for summary judgment.

#### 1. *Chimulera's Motion to Dismiss and Lamb's Cross-Motion for Summary Judgment*

The currently operative complaint contains three counts.  The first count invokes both the Privacy Act and FOIA and alleges that the MCC failed to comply with its statutory obligations to provide Lamb with the records he requested.  Dkt. 9 at 4–5, ¶¶ 13–18. The second and third counts both invoke the Privacy Act.  *Id.* at 5–6, ¶¶ 19–27.  According to the second count, Chiamulera disseminated Privacy Act-protected records without Lamb's authorization, *id.* at 5, ¶¶ 19–22, and, according the third count, he failed to take reasonable steps to ensure that Privacy Act records were "accurate, complete, timely and relevant for agency purposes," *id.* at 5–6, ¶¶ 23–27.

As an initial matter, Chiamulera and Lamb dispute whether the first count, which seeks disclosure of agency records, is asserted against the MCC and Chiamulera or just the MCC. *Compare* Dkt. 11-2 at 3 *with* Dkt. 21 at 2.  Given the allegations that Lamb submitted his request to the MCC and that the MCC lacked a "legal basis for the denial" of Lamb's request, Dkt. 9 at 4–5, ¶¶ 14, 18, Chiamulera has the better argument.  But, even giving Lamb the benefit of the doubt as a *pro se* litigant, the Court concludes that none of the three claims can stand as asserted against Chiamulera.  It is well-settled that "no cause of action exists that would entitle" a plaintiff to obtain relief from an individual "under the Privacy Act or FOIA."  *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (per curiam).  This conclusion follows from the indisputable premise that "[b]oth statutes concern the obligations of agencies as distinct from individual employees in those agencies."  *Id.*  The Court will, accordingly, dismiss all claims currently pending against Chiamulera.

Lamb also cross-moves for summary judgment against Chiamulera, arguing that Chiamulera should be "enjoin[ed] . . . from further deprivation of [the] requested records" and required to "expunge all records or information created, compiled, adjudicated or maintained by . . . Chiamulera that [are] inaccurate, illegal and/or derogatory to . . . Lamb."  Dkt. 21 at 2.  For the same reason that Chiamulera is entitled to judgment in his favor, Lamb's cross-motion must fail.  Both the Privacy Act and FOIA apply to agency records, *see Martinez*, 444 F.3d at 624, and only the agency has the authority or the ability to produce or correct those records.

2. *The MCC's Motion for Summary Judgment and Lamb's Cross-Motion*

The MCC asserts that it has disclosed all responsive records "with no redactions or withholdings," Dkt. 17 at 5, and that, as a result, Lamb's FOIA claim is moot, *id.* at 8–9.  Although the MCC did not separately mention Lamb's Privacy Act claim seeking the disclosure

of the same records in its motion for summary judgment, the same line of reasoning applies, and the MCC subsequently "clarifie[d]" that it intended to seek summary judgment on both claims. Dkt. 37 at 1 n.1.  In response, Lamb disputes that he has now received all of the records he sought, and he cross-moves for summary judgment to the extent his amended complaint seeks disclosure of those records.  Dkt. 22 at 9.

FOIA requires that an agency conduct an adequate search for responsive records. "An agency fulfills [this] obligation[ ] . . . if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia–Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). "In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  "In certain circumstances," however, "a court may place significant weight on the fact that a records search failed to turn up a particular document in analyzing the adequacy of a records search." *Id.*  The Court may consider, for example, the fact that "the Department ignored indications in documents found in its initial search that there were additional responsive documents elsewhere," *id.* (citing *Campbell v. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1996)), or evidence that "at the time [it] search[ed] its files there was reason to believe that [a particular document] was in those files," *id.*  Ultimately, the question is whether the agency's affidavits are adequate, and not whether the agency failed to locate a document that the plaintiff

speculates must exist.  *Id.* at 315–16.  The agency's failure to locate a document that the evidence indicates likely existed at the time of the search, however, may give rise to "material doubt" about the adequacy of the agency's affidavits.  *Valencia–Lucena*, 180 F.3d at 325; *Iturralde*, 315 F.3d at 315.

Here, Lamb has identified one potential inconsistency in MCC's declaration that, at a minimum, warrants clarification.  According to the MCC's Chief FOIA Officer, after the Department of State conducts a background investigation on behalf of the MCC, it transmits "a *Report of Investigation* . . . and any documents related to suitability/security clearance . . . to [the] MCC for review."  Dkt. 17-1 at 2 ¶ 5 (Walker-Watkins Decl.) (emphasis added).  She further explains, moreover, that the search of the MCC's records conducted in this case located "five . . . documents that were responsive to plaintiff's request, including the *Report of Investigation*."  *Id.* at 3, ¶ 8 (emphasis added).  And, in responding to Lamb's FOIA request, the MCC did, in fact, identify five records.  Those records included:  "(1) MCC Adjudication Worksheet Grid; (2) Credit Report Summary; (3) Finger Print Results; (4) Electronic Questionnaire for Investigation Processing (e-QIP) application, and (5) MCC letter stating the reason for an unfavorable treatment."  Dkt. 17-6 at 1.  The response, however, contains no reference to a "Report of Investigation" prepared by the State Department and transmitted to the MCC.

There may be a simple explanation for this inconsistency, but, on the record as it now stands, it is not evident.  Thus, at least in its current posture, this case is similar to *Oglesby*, 79 F.3d at 1185, and *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 834 (D.C. Cir. 1979), where the evidence raised questions about the adequacy of the search and the agencies' affidavits failed to provide sufficient detail to put those questions to rest.  Under these

circumstances, the proper recourse is for the Court to require "a more exhaustive account of" the MCC's search, *Founding Church of Scientology*, 610 F.2d at 837, and, in particular, to require that it provide a further declaration explaining whether the "Report of Investigation" was produced and, if not, why not. The Court will, accordingly, deny the MCC's motion for summary judgment on Count One of the Complaint.

For similar reasons, the Court will also deny Lamb's cross-motion for summary judgment on Count One. At this point in the litigation, the Court lacks sufficient information to determine whether the MCC's search was adequate and whether any responsive documents were improperly withheld. "It is well settled in Freedom of Information Act cases as in any others that '[s]ummary judgment may be granted only if the moving party proves that no substantial and material facts are in dispute and that he is entitled to judgment as a matter of law." *Id.* at 836 (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (1973)). The fact that Lamb has pointed to evidence that currently precludes entry of summary judgment in favor of the MCC does not mean that he has demonstrated the absence of a genuine dispute of material fact and that he is entitled to prevail. To the contrary, all that is apparent from the current record is that further explanation is warranted.

With respect to the remaining two Counts of the amended complaint, the Court will dismiss both counts against the MCC for failure to state a claim. Count Two of the amended complaint asserts a claim under the Privacy Act for the improper dissemination of Privacy Act protected materials, and Count Three asserts a claim under the Privacy Act for failure to ensure that those records were accurate, complete, and relevant for agency purposes. *See* Dkt. 9 at 5–6, ¶¶ 19–27.

The MCC takes the position that Count Two was asserted solely against Chiamulera, and not against the MCC.  Under this view, no further action is required because the Court has already dismissed Count Two against Chiamulera.  Lamb, however, seemingly contends that he intended to assert Count Two against both Chiamulera and the MCC.  See Dkt. 22 at 9, 19 (seeking summary judgment against the MCC on Counts One and Two).  That position, however, does not withstand scrutiny.  Although Count Two does incorporate paragraphs 1–12 of the amended complaint, *see* Dkt. 9 at 5, ¶ 19, it alleges only that Chiamulera wrongfully disseminated protected information.  If Chiamulera worked for *the MCC* that might be enough, given the liberal pleading rules applicable to pro se litigants, *see, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and the fact that the Privacy Act regulates the conduct of federal agencies, as opposed to individuals.  But the amended complaint alleges that Chiamulera worked for the Office of Personnel Security and Suitability *in the Department of State*, Dkt. 9 at 2, ¶ 5, and does not allege that he was an employee or agent of the MCC.  Moreover, even if he did work for the MCC, Count Two would still fail to state a claim against the MCC.  The Privacy Act permits disclosure of otherwise protected records to agency personnel "who have a need for the record in the performance of their duties," 5 U.S.C. § 552a(b)(1), and the amended complaint does not allege that Chiamulera disclosed the records at issue to anyone at the MCC (or elsewhere) for any reason unrelated to the agency's security check and suitability determination.  As a result, the Court does not read Count Two of the amended complaint as directed at the MCC, and, in any event, even if it were directed at the MCC, it would fail to state a claim upon which relief can be granted.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court will, accordingly, deny Lamb's motion for summary judgment against the MCC on Count Two of the amended complaint and, to avoid any confusion, will dismiss that Count—to the extent that it is even arguably asserted against the MCC—for failure to state a claim upon which relief can be granted.

This, then, leaves Count Three, which the MCC correctly reads to allege claims against both the MCC and Chiamulera.  See Dkt. 9 at 6, ¶ 26 (alleging that "Chiamulera, [the] MCC, and its employees and officers" violated Lamb's rights under the Privacy Act).  This Count alleges that "[p]rior to disseminating information and records concerning . . . Lamb, . . . Chiamulera failed to make reasonable efforts to ensure that the information and records were accurate, complete, timely and relevant for agency purposes in violation of 5 U.S.C. § 552a(e)(6)."  *Id.* at 5, ¶ 24.  Although not raised in the MCC's motion for summary judgment, the Court will *sua sponte* dismiss Count Three for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6); *see also* Fed. R. Civ. P. 8(a).  Section 552a(e)(6), which provides the gravamen of Lamb's claim, applies only to records disseminated "to any person other than an agency," 5 U.S.C. § 552a(e)(6), yet Lamb fails to include any allegation that the MCC disseminated his records to anyone outside that agency.  Moreover, although Lamb alleges that the MCC failed to make reasonable efforts to ensure the accuracy, timeliness and relevance of the information at issue, *id.* at 5, ¶ 24, the amended complaint contains no "factual content" to support that claim, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Accordingly, absent factual allegations regarding the dissemination of the records at issue to someone "other than an agency" and some indication of how the records at issue were inaccurate, untimely or irrelevant to the purposes of the MCC, Count Three cannot stand.

The Court will, accordingly, dismiss Count Three pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6).

  3.  *Lamb's Motion to Strike*

Finally, Lamb separately moves to strike the declaration of Jason Cohen, Dkt. 43, which was submitted along with the MCC's reply brief in support of its motion for summary judgment, Dkt. 37-1.  In that declaration, counsel for the MCC avers that he mailed the five responsive records identified by the MCC to Lamb.  *Id.* at 1–2.  Lamb contends that the declaration must be stricken because "it cannot be presented in a form that would be admissible in evidence as defendant's [d]eclaration did not attach the material cited (records and proof of mailing or receipt)," these materials are not otherwise part of the record before this Court, and Cohen simply "assumes the alleged documents were processed through the U.S. postal service without providing proof."  Dkt. 43 at 3.  That contention, however, misunderstands the governing standard, which does not require that the declarant submit documentary proof of facts of which he or she has personal knowledge.  Here, Cohen has personal knowledge of whether he mailed the five agency records to Lamb, and he is competent to testify about what *he* did.  See Fed. R. Evid. 602.  Any doubt on this issue, moreover, has been put to rest by the MCC's later filing, which included the mailing receipt and tracking information.  *See* Dkt. 45-1.  Finally, Lamb's complaint that Cohen failed to provide proof that the documents were processed through the mail is unavailing in light of the "presumption of regularity" that attaches to the delivery of the mail. *See, e.g.*, *Legille v. Dann*, 544 F.2d 1, 7–9 & n.39 (D.C. Cir. 1976); *see also, e.g.*, *Latif v. Obama*, 677 F.3d 1175, 1178 (D.C. Cir. 2011) ("The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." (citation omitted)).  Without

clear evidence that the postal service did not work as expected, both Cohen and the Court may

presume that it did.  The Court will, accordingly, deny Lamb's motion to strike.

**B.      Motion for Leave to Amend**

Given the Court's decisions set forth above, and absent further amendment, all that

remains of the amended complaint is Lamb's allegation that the MCC has violated the Privacy

Act and FOIA by failing to produce at least one remaining record.  Over the course of the past

several months, however, Lamb has repeatedly sought leave to amend his complaint to add

additional defendants and claims.  Because all but the last of Lamb's proposed amendments

superseded each of the preceding proposed amendments, the Court has denied all but the last of

these motions as moot.  *See* Minute Order, Dec. 7, 2016.  The Court now turns to Lamb's most

recent motion for leave to amend, which would add three new defendants—the State

Department, James Blades (the MCC official responsible for contracts and administration), and

Tamiko Walker-Watkins (the MCC official responsible for FOIA compliance)—and over a

dozen new claims.  Dkt. 41-1.  Among others, Lamb seeks leave to add claims under the First,

Fourth, and Fourteenth Amendments to the Constitution; common law tort claims; claims under

the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*; and claims under the Administrative Procedures

Act, 5 U.S.C. § 551 *et seq.  Id.*

Federal Rule of Civil Procedure 15(a) allows a plaintiff to amend his complaint once as a

matter of course within twenty-one days after serving it, or within twenty-one days of service of

a responsive pleading or a Rule 12 motion to dismiss, for a more definite statement, or to strike.

Fed. R. Civ. P. 15(a)(1).  Because Lamb has already amended his complaint once, and because

more than twenty-one days passed between the time Chiamulera moved to dismiss, Dkt. 11 (June

27, 2016), and the time Lamb filed his most recent motion for leave to amend, Dkt. 41 (Nov. 21,

2016), any further amendment is permitted "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

The Court, of course, "should freely give leave when justice so requires." *Id.* But "leave to amend should be denied when amendment would be futile," *Sai v. Dep't of Homeland Sec.*, 149 F. Supp. 3d 99, 126 (D.D.C. 2015), including, most notably, when "the proposed claim would not survive a motion to dismiss," *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). Thus, if the proposed amended complaint does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678 (quotation marks omitted), leave to amend should be denied. In making this assessment, the Court must apply the same rules applicable to its consideration of a motion to dismiss. The Court must, accordingly, "accept all the well-pleaded factual allegations of the" proposed amended "complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor," but it need not "assume the truth of legal conclusions." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015). Likewise, as when considering a motion to dismiss, the Court will hold a *pro se* litigant seeking to amend to "less stringent standards than" those that apply to "formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quotation marks omitted). But, like any other party, a *pro se* plaintiff must comply with the Federal Rules of Civil Procedure and will not be granted leave to file an amended complaint that fails to state a claim upon which relief can be granted. *See, e.g.*, *McFadden v. Washington Metro. Area Trans. Auth.*, 168 F. Supp. 3d 100, 111 (D.D.C. 2016) (denying leave to pro se party to amend complaint to include claim that would not survive a motion to dismiss). Most, but not all, of the claims that Lamb seeks to add fail to meet even this lenient standard.

1. *Previously Asserted Claims*

As an initial matter, the Court concludes that several counts contained in Lamb's proposed second amended complaint duplicate in whole or in part the claims contained in his first amended complaint. With respect to these claims, the same reasoning discussed above applies and is equally controlling of Lamb's motion for leave to amend. The Court, accordingly, will grant Lamb's motion for leave to amend with respect to Counts One, Two, Nine and Ten, which seek the production of MCC records pursuant to the Privacy Act and FOIA and thus merely restate the claims asserted in Count One of the amended complaint.

Count Twelve of the proposed second amended complaint duplicates Count Three of Lamb's amended complaint, but adds additional allegations and claims. Dkt. 41-1 at 15–16, ¶¶ 76–82. The Court will address those new allegations and claims below. To the extent Count Twelve alleges that Chiamulera and the MCC violated 5 U.S.C. § 552a(e)(6) by failing to ensure the accuracy, completeness, timeliness and relevance of the records at issue "[p]rior to disseminating [those] records," *id.* at 15, ¶ 77, however, the Court has already concluded that those claims are futile because (1) Chiamulera is not subject to suit under the Privacy Act, and (2) Lamb has not alleged that the MCC disseminated the records at issue outside the agency and has not identified any way in which those records were inaccurate, incomplete, untimely, or irrelevant. This same reasoning, moreover, applies with respect to the section 552a(e)(6) claims that Lamb now seeks leave to assert against Tamiko Walker-Watkins, the Chief FOIA Officer for the MCC, James R. Blades, Lamb's ultimate supervisor at the MCC, and the Department of State. Like Chiamulera, Walker-Watkins and Blades are not subject to suit under the Privacy Act. And, although the State Department stands in a slightly different posture than the MCC because the proposed second amended complaint does allege that it made *a* dissemination, that

alleged dissemination was to the MCC—another federal agency—and thus does not change the

result.  "The statutory language makes clear that [section 552a(e)(6)] does not apply when

information is disclosed within the agency *or to another agency*."  *Thompson v. Dep't of State*,

400 F. Supp. 2d 1, 21–22 (D.D.C. 2005) (emphasis added).  The Court will thus deny leave to

amend to assert claims under section 552a(e)(6) against any of the putative defendants.[1]

    2. *Additional FOIA and Privacy Act Claims and Related Claims*

    Lamb's proposed second amended complaint invokes the Privacy Act and FOIA in five

additional counts.  In the first two of these—Counts Three and Four—Lamb alleges that Walker-

Watkins failed to provide him with the Privacy Act and FOIA "related information" that he

sought and that she thereby violated his rights under the Fifth and Fourteenth Amendments to the

Constitution.  Dkt. 41-1 at 10–12, ¶¶ 42–53.  To the extent Lamb seeks to assert claims against

Walker-Watkins under the Privacy Act and FOIA, those proposed claims are futile because "no

cause of action exists that would entitle" a plaintiff to obtain relief from an individual "under the

Privacy Act or FOIA."  *Martinez*, 444 F.3d at 624; *see also* 5 U.S.C. § 552a(g)(1) ("[T]he

individual may bring a civil action against *the agency* . . . .") (emphasis added); 5 U.S.C. §

552(a)(4)(a)(B) ("[T]he district court . . . has jurisdiction to enjoin *the agency* from withholding

agency records and to order production of any agency records improperly withheld from the

---

[1]  Lamb does not allege a violation of 5 U.S.C. § 552a(e)(5), which requires that an agency "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."  Although the Court recognizes that *pro se* litigants are not held to the same standards are those who are represented by counsel, *see Erickson*, 551 U.S. at 94, the Court declines to construe Lamb's claim as arising under section 552a(e)(5) because he stresses the dissemination of his records, rather than any reliance on those records in making a determination, and because, in any event, the proposed second amended complaint is devoid of any factual allegations about the nature of the purported inaccuracy or incompleteness of the records at issue.

complainant.") (emphasis added).  And, to the extent he seeks to premise these same claims on

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971),

and the Fifth or Fourteenth Amendments to the Constitution, they are equally futile.  As the D.C.

Circuit has held, both the Privacy Act and FOIA constitute the type of comprehensive remedial

scheme that precludes the creation of a *Bivens* remedy.  *See Wilson v. Libby*, 535 F.3d 697, 704

(D.C. Cir. 2008) (Privacy Act); *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 777

(D.C. Cir. 2002) (FOIA).

Count Five of the proposed second amended complaint alleges that Walker-Watkins and

the MCC violated the Privacy Act and FOIA by failing to "safeguard . . . Lamb's personal

identifiable information."  Dkt. 41-1 at 12, ¶¶ 54–57.  As explained above, Walker-Watkins is

not subject to suit under either act, and thus Count Five of the proposed complaint is futile as

against her.  For different reasons, it is also futile as against the MCC.  In particular, all that

Count Five apparently alleges is that Walker-Watkins mailed Lamb the records that he requested,

and that Lamb never received that mailing.  *Id.*  It is common practice for agencies to mail

records to the requesting party, and there is nothing inherently unlawful or improper in doing so.

Here, moreover, Lamb merely alleges that he did not receive the requested materials.  He does

not allege that they were misdirected or that they were received by anyone else.  Under these

circumstances, the Court cannot conclude that Lamb has "state[d] a claim upon which relief can

be granted."  Fed. R. Civ. P. 12(b)(6).

Count Twelve of the proposed second amended complaint suffers from similar defects.

Putting aside Lamb's section 552a(e)(6) claims, which are discussed above, Count Twelve

asserts various constitutional claims against the three individual defendants, the MCC and the

State Department.  Each of those claims, however, is premised on Lamb's contentions that the

defendants improperly disseminated Privacy Act protected materials about him without ensuring that those materials were accurate.  Because the Privacy Act precludes creation of a *Bivens* remedy under these circumstances, *see Wilson*, 535 F.3d at 704, Lamb's claims against the individual defendants are futile.  Any claim against the MCC or the State Department, moreover, would require a waiver of sovereign immunity.  The Court, however, is unaware of any waiver of sovereign immunity that would apply to the constitutional tort claims asserted in Count Twelve.  Although the Tucker Act waives sovereign immunity for certain claims "founded . . . upon the Constitution," 28 U.S.C. § 1346, "[t]he courts have uniformly held that jurisdiction under" this provision "is limited to claims under the 'takings clause' of the Fifth Amendment," *Clark v. Library of Congress*, 750 F.2d 89, 103 n.31 (D.C. Cir. 1984), which is not implicated here.  Similarly, the waiver of sovereign immunity contained in the Federal Tort Claims Act, 28 U.S.C. § 1346(b), is not applicable to constitutional tort claims, *see FDIC v. Meyer*, 510 U.S. 471, 478 (1994).  Finally, although the Administrative Procedure Act waives sovereign immunity in cases "seeking relief other than money damages," 5 U.S.C. § 702; *Trudeau v. FTC*, 456 F.3d 178, 185–186 (D.C. Cir. 2006), Lamb's "improper dissemination" claim in Count Twelve seeks compensation for conduct that has already occurred, and, accordingly, cannot reasonably construed as a claim "for relief other than money damages."  5 U.S.C. § 702.  As a result, the Court concludes that Lamb's efforts to add Count Twelve to his operative complaint are also futile.

This, then, leaves Count Eleven as the only remaining proposed claim relating to the disclosure of agency records.  This claim differs from the claims currently asserted in the amended complaint because it is directed at the Department of State, rather than the MCC.  It asserts that on April 21, 2016, Lamb submitted a request to the State Department pursuant to the

Privacy Act and FOIA, seeking "all information maintained" by the State Department about him, Dkt. 41-1 at 15, ¶ 71, and that his request has gone unanswered, *id.* at 15, ¶¶ 72–73.  There is no obvious defect in this claim as alleged, and the Court will therefore grant leave to add this claim to the pending action.

3. *Due Process Claims Relating to Lamb's Removal from the Federal Contract*

Lamb's proposed second amended complaint also seeks to assert three due process claims relating to his "removal from the federal contract under which [he] provided services to the government."  Dkt. 41-1 at 13, ¶ 58.  In proposed Count Six, he alleges that Blades violated his due process rights by refusing to provide any information regarding "the reason for his removal from the federal contract."  *Id.*  In proposed Count Seven, he alleges that Blades violated his rights by failing to provide him with "due process prior to his removal" from the contract.  *Id.* at 13, ¶¶ 62–63.  And, in proposed Count Thirteen, he alleges that he possessed a property interest in his employment under the federal contract and that Blades, and presumably the MCC, deprived him of that right without due process.  *Id.* at 16–17, ¶¶ 83–85.

Although the relevant allegations are not entirely clear, giving Lamb the benefit of the doubt it appears that he alleges that he was hired by a private company to perform work for the MCC pursuant to a federal contract; that in order to be permitted to perform that work, the MCC required that he pass a background check and suitability assessment; that after starting work he was informed that some issue arose in his background check; that, as a result, he was not permitted to continue to work on the MCC contract and thus lost his job; and, finally, that, despite his best efforts, no one from the MCC has ever explained to him what issue arose or given him the opportunity to respond to the agency's concerns.  *See, e.g.*, Dkt. 41-1 at 5, ¶ 14 (alleging "Blades violated . . . Lamb's procedural and substantive due process rights prior to his

removal and firing"; that "Lamb asserts a property interest in his employment under Federal

Acquisition Contract number MCC-12-PSC-0033-MCC, Task Order for Acquisition Business

Analyst Support Services"; and that Lamb was "deprived of the proper procedures for

challenging the deprivation to that interest.")

The MCC argues that these claims are futile because Lamb has failed to plead facts

sufficient "to establish that the defendants are not entitled to qualified immunity."  Dkt. 44 at 2–

3.  It fails to offer any support, however, for this conclusory assertion.  Indeed, the entirety of the

MCC's argument consists of the following paragraph:

> Here, Plaintiff alleges vague and undefined violations of the Fifth and Fourteenth
> Amendments with respect to actions that are clearly and obviously subsumed within
> the standard practice of the Freedom of Information Act, which provides all
> appropriate remedies.  Plaintiff has not averred any facts that would support the
> inference that a reasonably competent federal government employee violated a
> clearly established constitutional right.

Dkt. 44 at 3.  Far from establishing futility, the MCC does not even mention due process.

Nor can the Court determine on its own, based on the record that is currently before it,

whether Lamb's due process claims have any merit.  The D.C. Circuit, for example, has recently

explained that there are "two theories pursuant to which an individual who alleges 'government

interference with his future employment prospects may demonstrate the tangible change in status

required to prove constitutional injury.'"  *Crooks v. Mabus*, --- F.3d ---, 2016 WL 7422279, at *6

(D.C. Cir. Dec. 23, 2016) (citation omitted).  Under the first theory, the plaintiff must show that

the government's action "formally or automatically excludes [the plaintiff] from work on some

category of future [government] contracts or from other government employment opportunities."

*Id.* (citation omitted) (alteration in original).  Or, under the second theory, the plaintiff must

show that "the government's action 'precludes [the plaintiff]—whether formally or informally—

from such a broad range of opportunities that it interferes with [his] constitutionally protected

right to follow a chosen trade or profession.'" *Id.* (citation omitted) (alteration in original). Absent briefing—and, potentially, some factual development—on whether or how either of these theories, or some other theory, might apply to this case, the Court cannot conclude that Counts Six, Seven, and Thirteen of the proposed second amended complaint are futile.

Accordingly, the Court will grant Lamb's motion for leave to amend to add the claims set forth in proposed Counts Six, Seven and Thirteen.

4. *First Amendment Claim*

In proposed Count Eight, Lamb alleges that Blades violated his First Amendment rights by obtaining his "personal information under false pretense[s]" and that his personal information "should not have been made part of any record or proceeding." Dkt. 41-1 at 13–14, ¶¶ 64–65. Again, reading between the lines, Lamb appears to allege that Chiamulera had no legitimate reason to conduct a background check of Lamb; that he did so merely to enrich himself by receiving payment from the federal government for conducting the background check; and that Blades should never have received this information or relied upon it to preclude Lamb from working on the MCC contract. If this is, in fact, what Lamb intended to allege, it does not state a claim under the First Amendment. And, if this is not what he intended to allege, the Court can only conclude that the proposed claim lacks the basic information required to comply with Federal Rule of Civil Procedure 8(a). *See Twombly*, 550 U.S. at 555 (plaintiff must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original).

The Court will, accordingly, deny leave to amend to assert proposed Count Eight.

5. *Common Law Tort Claims*

Lamb also seeks leave to assert claims for common law torts in Counts Fourteen, Fifteen, and Sixteen of his proposed second amended complaint.  Dkt. 41-1 at 17–18, ¶¶ 86–91.  Count Fourteen alleges that Chiamulera intentionally interfered with Lamb's employment contract, *id.* at 17, ¶¶ 86–87; and Counts Fifteen and Sixteen allege that Chiamulera conducted Lamb's background check under "false pretense[s]," *id.* at 17–18, ¶¶ 88–91.  The only apparent difference between Counts Fifteen and Sixteen is that Count Fifteen alleges that "Chiamulera acted outside the scope of *his employment*," *id.* at 17, ¶ 88 (emphasis added), while Count Sixteen alleges that he "acted outside of the scope of *his official capacity*," *id.* at 18, ¶ 90 (emphasis added).

The different allegations contained in Counts Fifteen and Sixteen may be indicative of Lamb's uncertainty about whether Chiamulera was an employee of the State Department or an contractor retained to assist the Department in performing background checks.  Indeed, Lamb's amended complaint alleges that Chiamulera was "an independent contractor to the Office of Personnel Security & Suitability" within the State Department's Bureau of Diplomatic Security, Dkt. 9 at 2, ¶ 5, while his proposed second amended complaint alleges that Chiamulera was "an employee of the Office of Personnel Security & Suitability," Dkt. 41-1 at 3, ¶ 6.  For purposes of evaluating Lamb's motion for leave to amend, the Court must take Lamb's proposed second amended complaint on its own terms, and, thus, for present purposes, the Court must accept Lamb's allegation that Chiamulera was a government employee.  It follows from that premise, however, that it would be futile to permit Lamb to amend his complaint to assert his common law tort claims.

Under the Westfall Act, 28 U.S.C. § 2679, a federal employee acting within the scope of her employment is immune from common law tort lawsuits, *see* 28 U.S.C. § 2679(b)(1); *Wuterich v. Murtha*, 562 F.3d 375, 380 (D.C. Cir. 2009), and, in lieu of permitting suit against the employee, the Court must substitute the United States as the party defendant, *see* 28 U.S.C. § 2679(d).  In the ordinary course, where an operative pleading asserts a claim against a federal employee, the employee is required to deliver a copy of the pleading to her immediate supervisor, who must forward the pleading to the United States Attorney for the relevant district. *Id.* § 2679(c).  The Attorney General or her designee must then decide whether to certify that the defendant was acting within the scope of her office or employment.  *Id.* § 2679(d).  Upon issuance of such a certification, the case is "deemed to be an action or proceeding brought against the United States under the provisions" of the Federal Tort Claims Act ("FTCA").  *Id.* § 2679(d)(2).

Because Lamb has not, in fact, brought a common law tort claim against Chiamulera— but, rather, has merely sought leave to do so—there has been no occasion for Chiamulera to seek a certification or for the Attorney General or her designee to make the required determination. Rather, the relevant question is simply whether it would be futile to permit the amendment; that is, whether there is reason to believe that permitting the amendment would yield a viable claim. Based on Lamb's own allegations, the Court concludes that the proposed amendment would be futile.

In applying the Westfall Act, courts employ the *respondeat superior* law of the state in which the alleged tort occurred, which in this case is the District of Columbia.  *See Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 663 (D.C. Cir. 2006).  The District of Columbia follows the approach prescribed in the *Restatement (Second) of Agency*:

(1) Conduct of a servant is within the scope of employment if, but only if:

    (a) it is of the kind he is employed to perform;

    (b) it occurs substantially within the authorized time and space limits;

    (c) it is actuated, at least in part, by a purpose to serve the master, and

    (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized by, far beyond the authorized space and time limits, or too little actuated by a purpose to serve the master.

*Restatement (Second) of Agency* § 228 (1958); *see Moseley v, Second New St. Paul Baptist Church*, 534 A.2d 346, 348 n.4 (D.C. 1987).

Lamb alleges that "Chiamulera acted outside the scope of his employment," Dkt. 41-1 at 17–18, ¶¶ 86, 88, 90, but that assertion constitutes no more than a legal conclusion, which the Court need not accept as true, *see, e.g.*, *Banneker Ventures*, 798 F.3d at 1129.  In contrast, the factual allegations in the proposed second amended complaint, which the Court must accept as true for present purposes, *see id.*, point to the opposite conclusion.  Lamb alleges, for example, that Chiamulera was "an employee" of the State Department's "Office of Personnel Security & Suitability," Dkt. 41-1 at 3, ¶ 6; that Chiamulera conducted "an independent background investigation" of Lamb, *id.* at 4, ¶ 11; that Lamb "was informed that the purpose of . . . Chiamulera's independent background investigation of him was in connection [with Lamb's] the SF85 Public Trust application," *id.* at 7, ¶ 20; that when Lamb posed questions about the scope of the investigation, Chiamulera referred Lamb to the State Department, *id*. at 7, ¶ 22; that Chiamulera's investigation was used to adjudicate Lamb's suitability to perform work for the MCC, *id.* at 5, ¶¶ 12-13; and that Lamb was removed from the MCC contract because the "security check came back unfavorable, *id.* at 5, ¶ 15.  In short, based on Lamb's own

allegations, Chiamulera was employed to perform background checks for the State Department, and that is what he did.  Moreover, Lamb's conclusory allegation that Chiamulera performed the background check to enrich himself does not, absent more, support a conclusion that he was acting beyond the scope of his employment.  There is no suggestion that the State Department or the MCC did not want Chiamulera to perform the check or that either agency has disavowed his efforts.  To the contrary, Lamb alleges that the MCC relied upon Chiamulera's efforts to make its determination that Lamb was unsuitable to perform work for the agency.  And, although the Department of Justice has not had occasion to decide whether to certify that Chiamulera was acting within the scope of his employment, the U.S. Attorney's Office has filed a brief (on behalf of the MCC) that opposes Lamb's motion to amend on the grounds, among others, that Lamb "appears to be attempting to assert common law tort claims against individual employees who were acting within the scope of their employment." Dkt. 44 at 4.

For all of these reasons, the Court concludes that Lamb's attempt to amend his complaint to allege common law tort claims against Chiamulera is futile.  This flaw, moreover, cannot be cured by substituting the United States for Chiamulera.  Under the FTCA, "[a]n action shall not be instituted upon a claim against the United States for money damages . . . , unless the claimant [has] first presented the claim to the appropriate Federal agency and his claim [has] been finally denied by the agency in writing."  28 U.S.C. § 2675(a).  The failure to exhaust administrative remedies, moreover, poses a jurisdictional bar to suit.  *Ali v. Rumsfeld*, 649 F.3d 762, 774–75 (D.C. Cir. 2011).  Because it is the plaintiff's burden to allege facts sufficient to establish jurisdiction, and because Lamb does not allege that he exhausted administrative remedies relating to his asserted common law tort claims, Lamb has failed to establish the necessary predicate for bringing suit against the United States.

The Court will, accordingly, deny Lamb's motion for leave to add Counts Fourteen, Fifteen, and Sixteen to his amended complaint.

6. *Discrimination Claims*

Finally, in proposed Counts Seventeen and Eighteen Lamb seeks to bring claims under the equal protection component of the Fifth Amendment's Due Process Clause, Title VII, and the Rehabilitation Act for discrimination in employment. Dkt. 41-1 at 18–19, ¶¶ 92–95. As an initial matter, each of these claims fails to satisfy Federal Rule of Civil Procedure 8(a), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). That rule sets a low bar, but the pleading must still "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley*, 355 U.S. at 47) (alteration in original). Lamb's bare assertion that he was treated "differently" than other similarly situated employees does not meet that standard.

In addition, to the extent proposed Counts Seventeen and Eighteen seek to assert constitutional equal protection claims, they are futile for second reason as well: Title VII and the Rehabilitation Act provide the exclusive remedy for claims of employment discrimination based on race, religion, sex, national origin, and disability. *See Ethnic Employees of Library of Congress v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985) (Title VII); *Paegle v. Dep't of Interior*, 813 F. Supp. 61, 67 (D.D.C. 1993) (Rehabilitation Act). And, to the extent proposed Counts Seventeen and Eighteen seek to assert claims under Title VII and the Rehabilitation Act, Lamb does not allege that he has exhausted administrative remedies, as required under both statutes. *See Scott v. Johnson*, 409 F.3d 466, 468 (D.C. Cir. 2005) (Title VII); *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) (Rehabilitation Act). This omission stands in marked

contrast to Lamb's repeated allegation that he "exhausted all required and available administrative remedies" with respect to his other claims. *See* Dkt. 41-1 at 9-16, ¶¶ 34, 40, 46, 52, 60, 74, 84. And, finally, to the extent that Lamb was not a federal employee, but rather a private contractor, he would have no basis to sue the federal government for employment discrimination. *See Spirides v. Reinhardt*, 613 F.3d 826, 829 (D.C. Cir. 1979) ("[i]ndividuals who are independent contractors . . . are unprotected" under Title VII against employment discrimination by the federal government); *Redd v. Summers*, 232 F.3d 933, 937 (D.C. Cir. 2000) (employment discrimination provisions of the Rehabilitation Act "appl[y] only to disability discrimination in federal government employment," and not to "an independent contractor.").

The Court, accordingly, concludes that Lamb's effort to amend his amended complaint to add proposed Counts Seventeen and Eighteen is futile.

## C.      Lamb's motion to appoint counsel

Lamb has also moved for appointed counsel under 28 U.S.C. § 1915(e)(1), which authorizes the Court to "request an attorney to represent any person unable to afford counsel." Under this court's local rules, the Court must consider the nature and complexity of the action, the potential merit of the *pro se* party's claims, the demonstrated inability of the *pro se* party to retain counsel by other means, and the degree to which the interests of justice will be served by appointment of counsel. L.Cv.R. 83.11(b)(3). In support of his request for counsel, Lamb merely recites verbatim the factors enumerated in the local rules and provides no additional detail or argument to substantiate his request. *See* Dkt. 27 at 1–2. Lamb's remaining Privacy Act and FOIA claims are not complex, and it is not yet clear whether any of the additional claims that the Court has permitted Lamb to assert will make it beyond threshold motions. Moreover, Lamb has not demonstrated that he has made an exhaustive effort to obtain the assistance of

counsel or that any greater interest of justice will be served by appointing counsel in this case

than in any other *pro se* case. Thus, after reviewing the motion and weighing the factors set forth

in the local rules, the Court determines that appointment of counsel is not warranted at this time,

and will thus deny Lamb's motion for the appointment of counsel without prejudice.

## CONCLUSION

Lamb's motion for leave to amend his complaint, Dkt. 41, is hereby **GRANTED** in part

and **DENIED** in part. Lamb may file a second amended complaint including counts One, Two,

Seven, Nine, Ten, Eleven, and Thirteen of the proposed amended complaint, Dkt. 41-1, as well

as count Six except to the extent that it alleges Privacy Act (as opposed to due process) claims;

the remaining counts of the proposed amended complaint would be futile and Lamb may not file

them in the second amended complaint. Lamb's motion for appointment of counsel, Dkt. 27, is

hereby **DENIED**. His motions for summary judgment, Dkts. 21, 22, are hereby **DENIED**. His

motion for entry of a default judgment and to strike the Cohen declaration, Dkt. 43, is hereby

**DENIED**. Chiamulera's motion to dismiss, Dkt. 11, is hereby **GRANTED**. The MCC's motion

for summary judgment, Dkt. 17, is hereby **DENIED**. The Court will *sua sponte* dismiss counts

Two and Three of the amended complaint, Dkt. 9, as against the MCC.

Finally, in light of the voluminous motions practice to date and the confusion that has

resulted from the sequence and repetition of those filings, it is hereby **ORDERED** that before

filing any further motions or other pleadings, plaintiff shall comply with the following process:

(1) Plaintiff shall contact counsel for the opposing parties and schedule a meet and confer

session. During the meet and confer session, the parties shall endeavor in good faith

to resolve the relevant dispute.

(2) If the parties are unable to resolve the relevant dispute, the parties shall *jointly* contact the deputy clerk to schedule a pre-motion conference with the Court regarding the dispute.  The Court will indicate whether the parties should file pre-conference statements regarding the dispute.

(3) Plaintiff shall not file any motion (regardless of whether denominated as a "motion," "notice," "errata," or any other title), without first participating in a pre-motion conference with the Court and obtaining a briefing schedule.

These requirements shall remain in effect pending further order of the Court.

**SO ORDERED**.


_/s/ Randolph D. Moss_
RANDOLPH D. MOSS
United States District Judge


Date:  January 6, 2017