# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |   |
|---|---|
| JERRY GORALSKI LAMB,<br><br>*Plaintiff*,<br><br>v.<br><br>MILLENNIUM CHALLENGE<br>CORPORATION, *et al.*,<br><br>*Defendants*. | Civil Action No. 16-765 (RDM) |

## MEMORANDUM OPINION AND ORDER

This is the third—but, as explained below, not the last—chapter in Jerry Goralski Lamb's effort to obtain records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, relating to his background investigation and suitability determination to work as a contractor for the Millennium Challenge Corporation ("MCC"). In the first chapter, the Court dismissed a number of Lamb's claims and granted partial summary judgment in favor of the MCC, and the Court granted Lamb leave to amend his complaint to add FOIA and Privacy Act claims against the Department of State ("State Department"), which assisted the MCC in conducting Lamb's background investigation. *See Lamb v. Millennium Challenge Corp.*, 228 F. Supp. 3d 28, 36–38, 42 (D.D.C. 2017) ("*Lamb I*"). Following the Court's order in *Lamb I*, the MCC and the State Department released additional records to Lamb, and the State Department referred a 121-page document to the Department of Defense ("DOD"), which, in turn, released the document with redactions on two pages. Dkt. 63 at 6–7. The parties, then, cross-moved for summary judgment, and, in the second chapter, the Court concluded that the agencies had conducted adequate searches, upheld most of the agencies' withholdings, but

determined that it needed additional information to decide whether DOD had lawfully redacted information from two pages of the 121-page document pursuant to FOIA Exemption 7(D) and Privacy Act Exemption (k)(5). *See Lamb v. Millennium Challenge Corp.*, 334 F. Supp. 3d 204, 210–18 (D.D.C. 2018) ("*Lamb II*").

In chapter three, which is now before the Court, the MCC and the State Department once again move for summary judgment, Dkt. 75, and Lamb opposes that motion and cross-moves for summary judgment, Dkt. 77. For the reasons explained below, the Court will **DENY** both motions without prejudice.

## I. BACKGROUND

The facts and procedural history of this action are set out in the Court's past opinions, *see Lamb I*, 228 F. Supp. 3d at 33–35; *Lamb II*, 334 F. Supp. 3d. at 208–10, and the Court will only briefly recount them here.

On February 22, 2016, Lamb began work as a contractor for the MCC in a position that required a "favorable background check." *Lamb I*, 228 F. Supp. 3d. at 34. Although Lamb believed that he had been cleared for the job, about two weeks after starting work he was contacted by MCC security and was told that a State Department contractor needed to interview him as part of his background investigation. *Id.* Lamb's background investigation was then conducted in part by the MCC and in part by the State Department, which, at times, assists the MCC in completing background investigations. *Id.* On April 18, 2016, MCC officials confiscated Lamb's government identification, removed him from the premises, and terminated his employment. *Id.* Later, Lamb learned from his employer, which held the contract with the MCC, that he was terminated because his "security check came back unfavorable." *Id.* (citation omitted).

Seeking to get to the bottom of the matter, Lamb submitted a FOIA and Privacy Act request to the MCC for "copies of all information maintained about himself," and, when the MCC failed timely to respond, he brought this suit. *Id.* The Court's prior opinions, *Lamb I* and *Lamb II*, addressed an array of disputes regarding the records Lamb seeks, which for present purposes, are not relevant. Rather, the pending cross-motions focus on a single, narrow dispute: the lawfulness of the redactions to two pages of a single document. After *Lamb I*, the MCC released several records and the State Department referred a 121-page document to DOD. DOD, in turn, released that document but with redactions on two pages. *See Lamb II*, 334 F. Supp. 3 at 210.

In *Lamb II*, Defendants argued that the redactions were lawful pursuant to FOIA Exemptions 7(C) and 7(D), and Privacy Act Exemption (k)(5). *Id.* at 215. In support of that contention, Defendants offered the declaration of Roxanne Jensen, the Acting Branch Chief of the Information Release Branch of the Air Force Office of Special Investigations ("AFOSI"). *Id.* Based on that declaration, the Court concluded that DOD lawfully redacted certain personal information pursuant to FOIA Exemption 7(C). *Id.* (citation omitted). The Court was unconvinced, however, that DOD had adequately explained its decision to redact other information pursuant to FOIA Exemption 7(D) and Privacy Act Exemption (k)(5). *Id.* at 217. FOIA Exemption 7(D) applies to records compiled for law enforcement purposes that "could reasonably be expected to disclose the identity of a confidential source . . . [or] information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). As the Court explained, the Jensen declaration failed to provide sufficient information to permit the Court to determine whether the source had received an express or implied assurance of confidentiality. *Lamb II*, 334

F. Supp. 3d at 217. Privacy Act Exemption (k)(5), in turn, permits the head of an agency to promulgate rules exempting:

> any system of records [that consists of] investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment, . . . Federal contracts, or access to classified information, but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the sourse would be held in confidence.

5 U.S.C. § 552a(k)(5). As the Court explained, the Jensen declaration failed to provide sufficient information to permit the Court to determine whether the source at issue had received an "express promise" of confidentiality or to identify the system of records at issue. *Lamb II*, 334 F. Supp. 3d at 218.

Following the Court's decision in *Lamb II*, Defendants have once again moved for summary judgment. Dkt. 75 at 7. This time, however, they no longer rely on Privacy Act Exemption (k)(5) and, instead, invoke Exemption (j)(2). *Id.* at 7. They continue to rely on FOIA Exemption 7(D) and have provided some additional information regarding the nature of the confidential source they seek to protect. Lamb opposes the motion and has cross-moved for summary judgment. Dkt. 77.

## II. ANALYSIS

Where an interested person submits a request for records under both the Privacy Act and FOIA, the responding agency may withhold or redact records only if the records at issue are subject to a relevant exemption "under *each* Act." *Martin v. Office of Special Counsel, Merit Sys. Prot. Bd.*, 819 F.2d 1181, 1184 (D.C. Cir. 1987) (emphasis in original); *see also* The Privacy Act of 1974, 5 U.S.C. § 552a(t)(2) ("No agency shall rely on any exemption in [the Privacy Act] to withhold from an individual any record which is otherwise accessible to such individual under the provisions of [the FOIA]."). The Court must, accordingly, separately consider whether DOD

lawfully redacted portions of the 121-page document under FOIA and whether the document is exempt under the Privacy Act.

## A. Privacy Act Exemption (j)(2)

Under Privacy Act Exemption (j)(2), an agency head "may promulgate rules" exempting a "system of records" from, among other things, the provision requiring that the agency permit an individual to have "access to his record or to any information pertaining to him which is contained in [a] system" of records. 5 U.S.C. §§ 552a(d)(1), 552a(j). The relevant "system of records," however, must either be "maintained by the Central Intelligence Agency," *id.* § 552a(j)(1), or

> by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

*Id.* § 552a(j)(2). Thus, the exemption applies, in relevant part, only to systems of records containing "investigatory material compiled for law enforcement purposes." *See Gowan v. U.S. Dep't of Air Force*, 148 F.3d 1182, 1189–90 (10th Cir. 1998) (quoting 5 U.S.C. § 552a(j)(2)). Unlike Exemption (k)(5), Exemption (j)(2) applies whether or not the disclosure would reveal the identity of a confidential source. *Compare* 5 U.S.C § 552a(k)(5) (exempting records "only to the extent" such material would reveal a confidential source), *with* § 552a(j)(2) (exempting entire

5

systems of records so long as the agency has promulgated regulations in conformity with the Privacy Act's requirements).

"To exempt a system of records from access under the Privacy Act, an agency must, first, promulgate rules, pursuant to the rulemaking requirements of 5 U.S.C. §§ 553(b)(1), (2), and (3), (c) and (e), and, second, state the reasons in the rule itself why the system of records is to be exempt from a provision of the Act. 5 U.S.C. § 552a(j)." *Exner v. FBI*, 612 F.2d 1202, 1204 (9th Cir. 1980). Consistent with these requirements, and pursuant to § 552a(j)(2), the Department of the Air Force has exempted a system of records entitled *Investigative Support Records* ("ISR"). *See* 32 C.F.R. § pt.806b, App. D(e)(3). As explained in the implementing rule, the exemption is supported by multiple rationales, including the risk that access to the ISR system "would present a serious impediment to law enforcement." *Id*. at (e)(3)(iii)(D).

DOD contends that, at least at one time, the information in dispute here "would have been" stored in the ISR system. Dkt. 75-3 at 5 (Herrington Decl. ¶ 9). This assumption follows from two factual premises. First, the ISR system has existed since at least 1983, *see* 48 Fed. Reg. 4192 (Jan. 28, 1983) (public notice for the "Investigative Support Records" system of records), and thus it was available to hold the record at issue here, which was created in March of 1986. Second, the ISR system was used to store "[r]eports of investigation … and other documentation pertaining to" criminal investigations, *see* Privacy Act of 1974; System of Records, 71 Fed. Reg. 50,894, 50,895 (Aug. 28, 2006), and the record here contains information pertaining to such a criminal investigation. Dkt. 75-3 at 4 (Herrington Decl. ¶ 7) ("When the Air Force created this particular Form 1, it was used to document initial reports of criminal conduct of interest to AFOSI"). DOD further notes that although the ISR has been renamed through amendments, its current iteration, the Investigative Information Management ("IIM") system,

serves the same purpose and is subject to the same rules: it remains a system of records that "collects information on individuals who are involved and suspected of being involved in crimes," and it remains exempt under § (j)(2) of the Privacy Act.[1]  *Id.* at 5–6 (Herrington Decl. ¶¶ 9–10).

Lamb does not dispute that the record at issue was, at least at one time, maintained in the ISR system.  Instead, he questions whether the record is still maintained—or should still be maintained—in that system of records, and he questions whether Defendants are entitled to invoke § (j)(2), which was neither raised nor addressed earlier in this proceeding.  Although neither argument is precisely on point, *pro se* filings are held to less stringent standards than those drafted by lawyers, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and, liberally construed, both arguments flag possible deficiencies in Defendants' § (j)(2) argument.

Lamb first disputes that the 121-page document is—or should be—currently maintained in the IIM system.  *See* Dkt. 77 at 5 (Pl.'s SUMF ¶ 9).  To support this contention, Lamb points to document retention schedules applicable to that system of records.  *Id.*  Under the regulations governing the ISR at the time the original record was created, paper records relating to criminal investigations were retained for 15 years.  *See* Privacy Act of 1974; Systems of Records; Deletions, Amendments, Republication, 48 Fed. Reg. 4106, 4193 (Jan. 29, 1983) (noting a 15-year retention and disposal policy for the "F124 AF D" system).  And, under the regulations governing the IIM system, "source control documentation" maintained at headquarters is "destroyed after 25 years."  *See* Privacy Act of 1974; System of Records, 71 Fed. Reg. 50,894, 50,896 (Aug. 28, 2006) (noting that source documentation in the I2MS system "is destroyed after

---

[1]  The system identifier—"F071 AFOSI D"—moreover, remains the same.  *See* Privacy Act of 1974; System of Records, 71 Fed. Reg. 50,894, 50,894 (Aug. 28, 2006)

7

25 years"). Thus, as Lamb correctly observes, under the Air Force's own document retention rules, the document at issue, which was created in March 1986, should have been destroyed by now. *See* Dkt. 77 at 11–12.

That premise, which the Court accepts for present purposes, does not advance Lamb's Privacy Act claim, which seeks access to the record.[2] Lamb cites to no law, and the Court is unaware of any law, that requires that an agency forfeit its reliance on a Privacy Act exemption when the agency fails to adhere to its document retention schedule. Lamb's argument does, however, raise two relevant questions: where is the document at issue maintained and what form does that record take? Defendants' statement of material facts, supporting declaration, and brief add to the mystery, moreover, merely asserting that "the record *would* have been covered by a System of Record Notice ('SORN') entitled, 'Investigative Support Records.'" Dkt. 75 at 5 (Defs.' SUMF ¶ 9) (emphasis added); Dkt. 75-3 at 5 (Herrington Decl. ¶ 9; Dkt. 75 at 8 ("Because the relevant record was created sometime around March 1986, it would have been covered by a System of Record Notice ('SORN') entitled, 'Investigative Support Records.'").

Although subject to clarification, the Court infers from the existing record that the document is not currently maintained in the IIM system of records (if it was, the Court assumes that Defendants would have said so), and that the document that was once maintained in the ISR system constitutes only a part of the 121-page document (according to DOD, it determined that pages 1, 4, 5-8 and 114-115 of the 121-page document contained DOD "equities," Dkt. 75-3 at 3 (Herrington Decl. ¶ 5)). If the Court's understanding that the document is not currently

---

[2] To the extent Lamb seeks to raise a separate Privacy Act challenge arising from the Defendant's alleged violation of their retention and disposal policy, such a challenge is beyond the scope of this briefing and must be raised in the first instance in an amended or new complaint.

maintained in the IIM system of records is correct, the 121-page document may still be exempt. Under the Privacy Act implementing regulations, records that were once part of an exempted system remain exempt even if they are subsequently "disseminated . . . and incorporated into [an agency's] non-exempt records systems." Privacy Act Implementation, 40 Fed. Reg. 28,949, 28,971 (July 9, 1975) (noting that the exemption is not based on the current "location of the records"). But, if the 121-page document constitutes a recompilation of information extracted from exempt records, and if that recompilation is not itself subject to a relevant Privacy Act exemption, Defendants bear the burden of showing that the "purposes underlying the exemption of the original document pertain to the recompilation as well." *See Doe v. F.B.I.*, 936 F.2d 1346, 1356 (D.C. Cir. 1991). Here, Defendants have not done so. As a result, the Court cannot enter summary judgment in Defendant's favor without further evidence regarding the nature of the document at issue, how the Privacy Act applies to each of its component parts, and how it is currently maintained and used.

Lamb's second objection also merits at least brief discussion. As Lamb puts it, the "briefs [in this round of briefing] were limited" to only issues "regarding Privacy Act Exemption (k)(5)." Dkt. 77 at 4 (Pl.'s SUMF ¶ 7). Although the basis for this assertion is unclear, because Lamb is proceeding *pro se*, the Court must construe his brief liberally, and, read in that manner, he raises a fair point: The Court has already entertained two rounds of summary judgment briefing, yet this is the first time that Defendants have invoked the exemption contained in 5 U.S.C. § 552a(j)(2). Although the Court is unaware of any precedent addressing an agency's late-invocation of a Privacy Act exemption, an agency must make a showing of good cause when it belatedly invokes a FOIA exemption. *See Shapiro v. U.S. Dep't of Justice*, 177 F. Supp. 3d 467, 469–70 (D.D.C. Apr. 8, 2016) ("*Shapiro II*"); *Shapiro v. U.S. Dep't of Justice*, No. CV 13-

555, 2016 WL 3023980, at *4 (D.D.C. May 25, 2016) ("*Shapiro III*"). It may be that FOIA's focus on "efficient, prompt, and full disclosure of information," *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 764 (D.C. Cir. 2000) (citation omitted), distinguishes the Privacy Act from FOIA. But, under both the Privacy Act and FOIA, "[b]asic principles of fairness, efficiency, and finality . . . counsel in favor of requiring the government to make some threshold showing of good cause to avoid a finding of forfeiture." *Shapiro III*, 2016 WL 3023980, at *4.

The Court will, accordingly, deny Defendants' and Lamb's cross-motions for summary judgment on Lamb's sole remaining Privacy Act claim. In renewing their motion for summary judgment, Defendants should address (1) whether the 121-page document is itself maintained in an exempt system of records; (2) whether the document is a recompilation, and, if so, whether the portions for the document at issue were derived from records maintained in an exempt system of records; (3) whether the purposes underlying that exemption apply to the recompilation as well; and (4) whether Defendants' invocation of the Exemption (j)(2) defense was timely.

**B.     FOIA Exemption 7(D)**

As noted in *Lamb II*, DOD also invokes FOIA Exemption 7(D) as a basis for its redaction of the 121-page document. Dkt. 75 at 7. To invoke that exemption, an agency must show (1) that the records at issue were compiled for law enforcement purposes and (2) that their disclosure "could reasonably be expected to disclose the identity of a confidential source . . . [or] information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). As the D.C. Circuit explained in *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20 (D.C. Cir. 1998), Exemption 7(D) applies only when "'the particular source spoke with an understanding that the communication would remain confidential.'" *Id.* at 34 (quoting *U.S. Dep't of Justice v. Landano*, 508 U.S. 165,

172 (1993)). Such an understanding may arise based on "either an express or implied assurance of confidentiality," but, either way, the agency's "declaration must permit meaningful judicial review by providing a sufficiently detailed explanation of the basis for the agency's conclusion." *Id.*

In *Lamb II*, the Court held that DOD had not provided sufficient information to determine whether it had properly invoked Exemption 7(D). 334 F. Supp. 3d at 218. During that round of briefing, the Defendants relied upon the Jensen declaration. Dkt. 63-4 (Jensen Decl.). That declaration merely asserted in conclusory terms that the redacted information was provided by a source who "provided the information with the understanding that" the Air Force "would keep the information confidential and [would] not disclose the information (except for law enforcement purposes.)" *Id*. at 6–7 (Jensen Decl. ¶ 20). As the Court explained, the Jensen declaration was insufficient because it failed to "indicate whether [Jensen's] assertion [was] made based on personal knowledge, whether the assurance [of confidentiality] was express or implied, or what, if any, evidence support[ed] [Jensen's] conclusion." 334 F. Supp. 3d at 218.

In support of Defendants' renewed motion for summary judgment, DOD has proffered the declaration of Mark Herrington, the Associate Deputy General Counsel in the Office of General Counsel of the United States Department of Defense. Dkt. 75-3 at 1 (Herrington Decl. ¶ 1). Herrington attests that the two pages at issue were properly redacted under Exemption 7(D) because the withheld information was "provided under circumstances in which confidentiality could reasonably be inferred." *Id*. at 7 (Herrington Decl. ¶ 12). In particular, Herrington explains, "[s]ignificant facts supporting the [AFOSI's] decision were contained in the redacted" material, and, in particular, that material showed that "the source disclosed the information about the criminal activity of other individuals while being interrogated about their involvement in

11

criminal acts." *Id.* "The source," moreover, "was not a commander, a security forces member, or an innocent bystander who would not be expected to have a particular need for confidentiality." *Id.* at 7 (Herrington Decl. ¶ 13). Finally, Herrington further explains that, "[a]t the time th[e] record was created, the criminal activity in question held significant consequences for [the] Air Force members who committed it," and "the source was providing information under circumstances in which he or she was also a participant in a criminal enterprise," giving rise to the inference that "the source only spoke to AFOSI because of the nature of his or her predicament." *Id.*

The Herrington declaration provides more detail than the Jensen declaration and better supports DOD's invocation of Exemption 7(D). But it still falls short—although not by much. Where, as here, there is no evidence that the source received an express assurance of confidentiality, the Court must "consider a number of factors to determine whether the source nonetheless 'spoke with an understanding that the communication would remain confidential.'" *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1184 (D.C. Cir. 2011) (quoting *Landano*, 508 U.S. at 172). "These factors include 'the character of the crime at issue,' 'the source's relation to the crime,' whether the source received payment, and whether the source has an 'ongoing relationship' with the law enforcement agency and typically communicates with the agency 'only at locations and under conditions which assure the contact will not be noticed.'" *Id.* (quoting *Landano*, 508 U.S. at 179 (internal quotation marks omitted)); *see also Borda v. U.S. Dep't of Justice*, 245 F. Supp. 3d 52, 60 (D.D.C. 2017) (discussing factors).

Here, the facts that the source was him- or herself "a participant in a criminal enterprise," was not "an innocent bystander," and that the activity at issue had "significant consequences" for those involved, Dkt. 75-3 at 7 (Herrington Decl. ¶ 13), all support DOD's determination that the

source provided AFOSI with the information at issue with the implicit understanding that "the information . . . would only be used for a law enforcement purpose[] and that he or she would otherwise be afforded a degree of confidentiality," *id.* Without some additional detail, however, the Court cannot assess the nature of the crime at issue, the source's role in any criminal activity, the nature of the consequences the source faced, and any other indicia of confidentiality. *Cf. Borda*, 245 F. Supp. 3d at 60 (concluding that the agency carried its burden by showing that the source made their statements in connection with an investigation into a conspiracy to distribute cocaine—a crime that the D.C. Circuit has characterized as particularly violent and dangerous). The Court will, accordingly, order the Defendants to provide the Court with an unredacted copy of the document in question for *ex parte*, in camera inspection. *See* 5 U.S.C. § 552(a)(4)(B) (district courts "may examine the contents" of agency records "in camera to determine whether such records or any part thereof shall be withheld under any of the [FOIA] exemptions"); *see also Allen v. Cent. Intelligence Agency*, 636 F.2d 1287, 1298 (D.C. Cir. 1980) (requiring in camera inspection where "[s]ufficiently detailed justifications for the agency's withholding . . . would reveal the very information sought to be protected").

After providing the Court with that document, Defendants may renew their motion for summary judgment with respect to Plaintiff's sole remaining FOIA claim. On the present record, however, the Court must deny the parties' cross-motions for summary judgment with respect to that claim.

## CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment, Dkt. 75, and Plaintiff's cross-motion for summary judgment, Dkt. 79, are **DENIED** without prejudice.


                                           /s/ Randolph D. Moss
                                           RANDOLPH D. MOSS
                                           United States District Judge


Date: August 30, 2019